UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICOLAS HERNANDEZ,

      Petitioner,

v.                                  CASE NO. 8:19-cv-2919-TPB-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

    Nicolas Hernandez petitions for a writ of habeas corpus under 28 U.S.C.
§ 2254 and challenges his state court conviction for second-degree murder. (Doc. 1)
The Respondent concedes that the petition is timely, asserts that some claims in the
petition are unexhausted, and asserts that all claims are meritless. (Doc. 10) After
reviewing the petition, the response, and the reply (Doc. 14), the Court **DENIES** the
petition.

    Evidence at trial proved that Hernandez murdered Jose Martin Hernandez-
Escudero. On the morning of January 30, 2010, two migrant workers discovered
the body of the victim on the farm where they worked. (Doc. 11-3 at 21) The victim
was lying face down with duct tape wrapped around his hands and his head. (Doc.
11-3 at 21, 90, 173) Markings on the ground were consistent with someone having
dragged the victim's body from a house nearby to an oak tree in the center of the
crime scene. (Doc. 11-3 at 100–03, 175–76)

Another migrant worker, who lived in the same house as Hernandez, testified that Hernandez and other men were drinking alcohol the evening of January 29, 2010.  (Doc. 11-2 at 590, 593)  Two men and the victim arrived in a Ford Explorer drunk (Doc. 11-2 at 592), and one of the men began to fight with Simon Rodriguez, another migrant worker.  (Doc. 11-2 at 590, 593–94)  Hernandez called the police, the police told the men to leave, the two men walked away, and the victim went inside to use the bathroom.  (Doc. 11-2 at 595–97)  When the victim exited the bathroom, Rodriguez hit the victim in the back of the head and caused the victim to fall to the floor.  (Doc. 11-2 at 600)  Hernandez and Rodriguez removed the victim from the house and hit and kicked the victim outside for about five hours.  (Doc. 11-2 at 601, 604–10, 631)  The migrant worker went outside, told Hernandez and Rodriguez to stop beating the victim, and told the victim to leave, but the victim, who appeared very intoxicated, could only crawl.  (Doc. 11-2 at 617–19)  That evening, Hernandez told the migrant worker that the victim lived with Hernandez's wife in Mexico.  (Doc. 11-2 at 675–77)  The migrant worker heard Hernandez and Rodriguez tell each other that they needed to kill the victim.  (Doc. 11-2 at 618–19, 624)

Hernandez retrieved a knife and duct tape from inside the house.  (Doc. 11-2 at 625–26)  Rodriguez held the victim by the neck, while Hernandez wrapped the duct tape around the victim's head and feet.  (Doc. 11-2 at 634–36)  The victim stopped screaming after five or ten minutes.  (Doc. 11-2 at 636–38)  DNA from blood on a shirt that Hernandez wore and on a shoe that Rodriguez wore matched the

victim's DNA.  (Docs. 11-3 at 62–73, 271–77, 323–24 and 11-9 at 18–19)  A medical examiner identified injuries on the victim's body consistent with blunt force trauma and strangulation and opined that asphyxia from "the combined effects of the occlusion of [the] nose and mouth and strangulation" caused the victim's death. (Doc. 11-3 at 183–222)

After waiving his constitutional rights, Hernandez spoke with a detective. Hernandez admitted that he hit the victim when the victim exited the bathroom, that Rodriguez continued to hit the victim, that he retrieved the duct tape from the house, that he and Rodriguez both wrapped the duct tape around the victim's head, that Rodriguez held the victim while he continued to wrap the tape around the victim's head, and that he bound the victim's hands with the tape.  (Doc. 11-2 at 134–37, 144–49, 154–55, 158–59)  Hernandez taped the victim's mouth shut to punish the victim.  (Doc. 11-2 at 147–49, 156)  Hernandez said that, when Rodriguez told Hernandez that he was going to kill the victim, Hernandez asked Rodriguez to leave the victim alone, but Rodriguez proceeded to strangle the victim. (Doc. 11-2 at 149–51, 161–62)  The victim stopped moving after about half an hour. (Doc. 11-2 at 137–38)  Hernandez claimed that the victim could breathe when he wrapped the tape around the victim's head, but Rodriguez covered the victim's entire head with the tape.  (Doc. 11-2 at 156)  Hernandez told Rodriguez, "we won't be saved now," lamented to the detective, "we messed up," and claimed that the murder was a "mistake." (Doc. 11-2 at 137–38)

A jury found Hernandez guilty of second-degree murder (Doc. 11-2 at 196), the trial court sentenced Hernandez to life in prison (Doc. 11-2 at 219–24), and the state appellate court affirmed.  (Doc. 11-4 at 43)  The state appellate court denied Hernandez's petition alleging ineffective assistance of appellate counsel.  (Doc. 11-4 at 101)  The post-conviction court denied Hernandez relief after an evidentiary hearing (Docs. 11-5 at 70–100 and 11-10 at 187–94), and the state appellate court affirmed.  (Doc. 11-11 at 104)  Hernandez's federal petition follows.

Because Hernandez filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review of his claims.  *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997).  Under AEDPA, a federal court cannot grant relief unless Hernandez demonstrates that the state court's adjudication of the claim (1) was contrary to or an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of a fact.  28 U.S.C. § 2254(d).

Hernandez must exhaust the remedies available in state court before a federal court can grant relief.  28 U.S.C. § 2254(b)(1)(A).  Hernandez must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971).  The state court must have the first opportunity to review and correct any alleged violation of a federal right.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

In his federal petition (Doc. 1), Hernandez raises a Fifth Amendment claim based on *Miranda v. Arizona*, 384 U.S. 436 (1966), seven ineffective assistance of counsel claims, and an ineffective assistance of appellate counsel claim.  Because the state appellate court rejected all claims in decisions without a written opinion, this Court "look[s] through" the unexplained decisions to written orders by the trial court and the post-conviction court, which do provide reasons.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  For the ineffective assistance of appellate counsel claim which the state appellate court rejected in the first instance, Hernandez must demonstrate no reasonable basis for the denial of relief.  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

**Ground One**

Hernandez asserts that the trial court violated his federal rights by denying his motion to suppress his incriminating statements to police.  (Doc. 1 at 3–4)  Hernandez contends that he was unable to afford an attorney, and the detective who interrogated him failed to explain that, if he could not afford an attorney, police would appoint him an attorney before any questioning.  (Doc. 1 at 3–4)  He contends that he was an immigrant with a third-grade education, had never been arrested, and did not know his rights.  (Doc. 1 at 4)

The Respondent asserts that the claim is unexhausted and procedurally barred because Hernandez failed to raise the specific claim concerning the appointment of an attorney in his written motion.  (Doc. 10 at 9–13)  The

Respondent concedes that Hernandez raised the claim in his brief on appeal but contends that the claim was not preserved for review on appeal.  (Doc. 10 at 12–13)

In his brief on direct appeal, Hernandez asserted that the police officer failed to explain that he could consult with an attorney even if he could not afford to hire an attorney.  (Doc. 11-4 at 11–19)  Because the State of Florida failed to assert that the claim was not preserved for review on appeal in the answer brief (Doc. 11-4 at 28–31), the claim is not procedurally barred.  *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("This circuit to a point has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.  If the state had argued only the merits of Bennett's claim, and not procedural default, this presumption would be inapplicable here.") (citations omitted).

Hernandez fails to demonstrate that no reasonable basis supports the state appellate court's summary rejection of the claim.  *Richter*, 562 U.S. at 98. In *Miranda*, the U.S. Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  384 U.S.  at 444.  Before any questioning, the defendant must be informed that he has the right to remain silent, any statement can be used as evidence against him, and he has the right to have a retained or appointed attorney present.  *Id.* at 444–45.

"If an individual indicates that he wishes the assistance of counsel before any interrogation occurs, the authorities cannot rationally ignore or deny his request on the basis that the individual does not have or cannot afford a retained attorney." *Id*. at 472. "In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him." *Id*. at 473.

At the suppression hearing, the detective testified that he advised Hernandez of his *Miranda* rights in Spanish. (Doc. 11-2 at 281–89) Before the interrogation, the detective advised Hernandez that he could ask for an attorney even if he could not afford an attorney (Doc. 11-2 at 89–96) (bolding added):

| | |
|---|---|
| [Detective:] | Okay, before anything, let me read you something, okay? |
| [Hernandez:] | Mm hmm. |
| [Detective:] | We are doing an investigation in regards to a murder, okay? |
| [Hernandez:] | Yes, yes. |
| [Detective:] | Um, uh, your name is Nicolas Hernandez, where are you from, gentleman? |
| [Hernandez:] | From Hidalgo. |
| [Detective:] | From Hidalgo, Mexico? |
| [Hernandez:] | Yes. |
| [Detective:] | Okay, so you um, are you understanding the words I am telling you? |
| [Hernandez:] | Yes. |
| [Detective:] | Do you understand me? |

[Hernandez:]          Mm hmm.

. . .

[Detective:]          Um, but do you understand when I talk to you?

[Hernandez:]          Well yes, a little there.

[Detective:]          So, um, I'm going to read you something, okay?

[Hernandez:]          Mm hmm.

[Detective:]          Okay, it says, I, which is you, hereby give consent to be interrogated by the police official of the Hillsborough County Sheriff.

[Hernandez:]          Mm hmm.

[Detective:]          Okay? Named below in regards to the incident that I was telling you about um, or the above mentioned crime and I also understand that um, you have the right to remain silent, um, you can invoke that right at any time during the interrogation, do you understand?

[Hernandez:]          Mm hmm.

[Detective:]          So, in other words uh, you have the right to say, I don't, I don't want to say anything.

[Hernandez:]          [Unintelligible]

[Detective:]          Okay? Um, and, or we can begin to talk and at any moment you can tell me, oh I don't want to talk anymore, do you understand?

[Hernandez:]          Yes.

[Detective:]          Okay, you understand that, right? You understand it completely?

[Hernandez:]          Yes, yes, yes, yes.

| | |
|---|---|
| [Detective:] | Yes? Okay, um if you make a statement um, it can and will be used against you in a court of justice, that means that depending on what you tell me, we can, he and I can use that in a court of justice. |
| [Hernandez:] | Yes. |
| [Detective:] | Against you, do you understand that? |
| [Hernandez:] | Mm hmm. |
| [Detective:] | You have the right to have an attorney present during an interrogation, do you understand that? If you can't afford the services of an attorney, one will be assigned to you at no cost, if you wish so, do you understand that? |
| [Hernandez:] | Yes. |
| [Detective:] | Okay, if you wish to make a statement, you can invoke your right to an attorney or to remain silent at any time during the interrogation, do you understand that? |
| [Hernandez:] | [Unintelligible] |
| [Detective:] | That means that if we begin to talk and at some point you [would] rather have an attorney, we can do that and we stop talking. |
| [Hernandez:] | Yes. |
| [Detective:] | If you need [to] not say anything instead, we can also do that. |
| [Hernandez:] | [Unintelligible] |
| [Detective:] | Do you understand that? |
| [Hernandez:] | Yes. |
| [Detective:] | Do you understand all those rights? |
| [Hernandez:] | Yes. |

[Detective:]          Is there something that you do not understand?

[Hernandez:]        Hmm, like what?

[Detective:]          About what I just explained to you.

[Hernandez:]        No, well, no, none.

[Detective:]          Did you understand everything?

[Hernandez:]        More or less.

. . .

[Detective:]          . . . [O]kay, um, and at this moment, do you want to talk to us?

[Hernandez:]        Well, no, not until now, everything is, is fine.

[Detective:]          So we can talk?

[Hernandez:]        Yes.

[Detective:]          Yes? Okay, um, and do you want to answer some questions [ ] from us without, without having an attorney present?

[Hernandez:]        Well, well it's like that now, no, no, no.

[Detective:]          It's fine like this?

**[Hernandez:]**        **No, no, no, I say that we [unintelligible] that because well I don't, I don't, I don't have any money but we, we can talk that and —**

[Detective:]          — Can we talk?

[Hernandez:]        Yes, [unintelligible].

[Detective:]          Can we talk about what happened last night?

[Hernandez:]        Mm hmm, yes.

[Detective:]          Okay, so you want to talk to us
                      voluntarily?

[Hernandez:]          Mmm, no well yes, uh.

[Detective:]          It's just that when you say, no well yes,
                      for me to understand you, do you want to
                      talk to us or do you not want to talk to us?

[Hernandez:]          Uh, yes, well, yes.

[Detective:]          Yes? Okay, alright, this is what I read
                      you.

[Hernandez:]          Uh, huh.

[Detective:]          Do you know how to read?

[Hernandez:]          Well a little, I don't know how to read
                      much.

[Detective:]          A little? Okay, um, and this is what I read
                      you.

[Hernandez:]          Mm hmm.

[Detective:]          It says here consent to be interrogated,
                      you told me you reached third grade, you
                      don't use drugs, nor alcohol, I know you
                      all drank last night.

[Hernandez:]          Yes, [unintelligible].

[Detective:]          But right now you don't feel inebriated in
                      any way.

[Hernandez:]          No, well, not now.

[Detective:]          Okay, all the rights that I explained,
                      I checked them here.

[Hernandez:]          Mm hmm.

[Detective:]          One by one, as I read them to you.

[Hernandez:]          Mm hmm.

[Detective:]          And I also understand that you want to
                      talk to me.

| | |
|---|---|
| [Hernandez:] | Mm hmm. |
| [Detective:] | Okay? So if you can do me a favor and here where I put the X, see that I put the X only on things that I checked um, your initials here and sign for me here and what that is saying is just that you did understand your rights and that you want to talk to me and that's it. |
| [Hernandez:] | That's fine. |
| [Detective:] | Um and if you can sign for me where the X is please. |
| [Hernandez:] | Mm hmm. |

"*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures." *California v. Prysock*, 453 U.S. 355, 359 (1981). "The inquiry is simply whether the warnings reasonably 'convey[y] to [a suspect] his rights as required by *Miranda*.'" *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (quoting *Prysock*, 453 U.S. at 361). "[G]iving the warnings and getting a waiver has generally produced a virtual ticket of admissibility; maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver." *Missouri v. Seibert*, 542 U.S. 600, 608–09 (2004).

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations omitted) requires that the prosecutor demonstrate that the waiver is both knowing and voluntary:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation"

reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

The totality of the circumstances demonstrate that Hernandez understood that he could ask for an attorney even if he could not afford an attorney and that he knowingly and voluntarily waived that right.  The detective repeatedly asked Hernandez if he understood him.  Hernandez responded that he did.  The detective directly told Hernandez: "If you can't afford the services of an attorney, one will be assigned to you at no cost, if you wish so, do you understand that?"  Hernandez directly responded, "Yes."  The detective further informed Hernandez: "That means that if we begin to talk and at some point you [would] rather have an attorney, we can do that and we stop talking."  Hernandez responded, "Yes."  The detective presented Hernandez with a form in Spanish listing the right to appointed counsel, and Hernandez signed the form to memorialize his intent to waive that right.  (Doc. 11-2 at 63)

When the detective asked Hernandez if he wanted to speak without an attorney present, Hernandez commented that he did not have money but stated that he still wanted to speak with the detective.  The detective did not reply in a misleading way and instead simply confirmed that Hernandez still wanted to voluntarily speak.  Despite Hernandez's oblique reference to money, Hernandez's other unequivocal statements demonstrate that he understood his right to ask for

an attorney even if he could not afford one and knowingly and voluntarily waived that right.[1]

Hernandez cites no opinion by the U.S. Supreme Court requiring a detective to clarify a right if a suspect makes a brief comment which could be construed as a misunderstanding of that right. 28 U.S.C. § 2254(d)(1). *See, e.g., Davis v. United States*, 512 U.S. 452, 461–62 (1994) ("[W]e decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."). Because Hernandez fails to demonstrate that "the state court's ruling on the claim [ ] was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," Hernandez is not entitled to relief. *Harrington*, 562 U.S. at 103. *Pinholster*, 563 U.S. at 181 ("This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'") (citations omitted).

Lastly, even if admission of the confession violated *Miranda*, any error was harmless. Hernandez's confession contained both inculpatory and exculpatory statements and was cumulative to the testimony by the migrant worker, who was a disinterested witness not impeached in any significant way. The migrant worker

---

[1] *United States v. Lall*, 607 F.3d 1277 (11th Cir. 2010) and *Hart v. Att'y Gen. State of Florida*, 323 F.3d 884 (11th Cir. 2003) are distinguishable. In both cases, the detective affirmatively misled the defendant about his rights. *Lall*, 607 F.3d at 1283 ("Gaudio testified that before he entered the bedroom, he told Lall that he was not going to pursue any charges against him."); *Hart*, 323 F.3d at 894 ("During this colloquy on the pros and cons of hiring a lawyer, Schuster also told Hart that 'honesty wouldn't hurt him.'").

testified that he observed Hernandez and the co-defendant beat and kill the victim. (Doc. 11-2 at 600–38)  The migrant worker further testified that Hernandez told him that the victim lived with Hernandez's wife in Mexico and testified that Hernandez told the co-defendant that they needed to kill the victim.  (Doc. 11-2 at 618–19, 624, 675–77)  These statements were admitted for the truth of the matter asserted.  § 90.803(18)(a), Fla. Stat.  Further, physical evidence, including the victim's DNA from a blood stain on Hernandez's shirt, proved that Hernandez was present at the crime scene and participated in the beating of the victim.  (Docs. 11-3 at 62–73, 271–77, 323–24 and 11-9 at 18–19)  Because admission of the confession did not have a "'substantial and injurious effect or influence in determining the jury's verdict,'" error if any was harmless.  *Mansfield v. Sec'y, Dep't Corrs.*, 679 F.3d 1301, 1313 (11th Cir. 2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  Ground One is denied.

**Ground Two, Ground Three, and Ground Four**

In Ground Two, Hernandez asserts that trial counsel was ineffective for not filing an expanded motion for new trial.  (Doc. 1 at 5)  He contends that trial counsel should have raised in the new trial motion the impeachment claim and the claim under *Giglio v. United States*, 405 U.S. 150 (1972), that he raises in Ground Three ("sub-claim A"), should have raised the prosecutorial misconduct claim that he raises in Ground Four ("sub-claim B"), and should have argued that the guilty verdict was contrary to the weight of the evidence. ("sub-claim C") (Doc. 1 at 5)

In Ground Three, he asserts that trial counsel was ineffective for not investigating and impeaching the migrant worker who testified on behalf of the prosecutor and for not arguing that the prosecutor violated *Giglio* by presenting false testimony by the migrant worker.  (Doc. 1 at 5)  In Ground Four, he asserts that trial counsel was ineffective for not objecting to improper comments by the prosecutor during closing.  (Doc. 1 at 5)

**Sub-claim A**

In Ground Two, Hernandez asserts that trial counsel was ineffective for not filing an expanded motion for new trial and raising the impeachment and *Giglio* claims that he raises in Ground Three.  In Ground Three, he asserts that trial counsel was ineffective for not investigating and impeaching the migrant worker who testified for the prosecution ("Impeachment Claim") and for not arguing that the prosecutor violated *Giglio* by presenting false testimony by the migrant worker. ("*Giglio* Claim")

**Impeachment Claim**

Hernandez asserts that trial counsel was ineffective for not investigating and impeaching the migrant worker who testified for the prosecution.  He further asserts that trial counsel was ineffective for not raising this claim in an expanded motion for new trial.  In his federal petition, Hernandez contends that trial counsel should have impeached the migrant worker as follows (Doc. 1 at 5):

> [T]he key alleged fact[s] which [were] essential to impeach him on are those which raise Petitioner's conviction from third-degree felony murder or manslaughter to second-degree murder. These alleged statements are of the Petitioner and co-defendant discussing the need to kill the victim, the

16

> Petitioner's desire to kill the victim for sleeping with his wife in
> Mexico, [and] the Petitioner's desire to get rid of the body after
> they had killed the victim. Moreover, had trial counsel [ ]
> investigated the case further, he would have been able to
> impeach[ ] this witness with the fact Petitioner was not
> married in Mexico hence, the victim could not had have an
> affair with the Petitioner's wife. So thus, a reasonable
> probability exist[ed] the jury would have found Petitioner
> guilty of the lesser offenses.

Because an ineffective assistance of counsel claim is not cognizable in a

motion for new trial, the post-conviction court did not unreasonably deny the latter

claim. *Smith v. State*, 998 So. 2d 516, 522 (Fla. 2008) ("[I]neffective assistance

claims are not usually presented to the judge at trial, and we have repeatedly stated

such claims are not cognizable on direct appeal.").  Even if the claim was cognizable,

because the claim is meritless for the reasons below, trial counsel did not deficiently

perform. *Pinkney v. Sec'y, Fla. Dep't Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017)

("[A]n attorney will not be held to have performed deficiently for failing to perform a

futile act, one that would not have gotten his client any relief.").

### Statements about the Need to Kill the Victim

At trial, the migrant worker testified that he heard Hernandez and his

co-defendant state to each other that "they're going to have to kill the guy."  (Doc.

11-2 at 624)  The post-conviction court denied the claim based on trial counsel's

failure to impeach the migrant worker concerning this testimony because the record

refuted the claim.  (Doc. 11-5 at 77)  During a bench conference after trial counsel

objected to this testimony, the prosecutor informed the trial judge that, during his

deposition, the migrant worker testified that the co-defendant stated, "We have to

kill him or we'll bring back his friends," and Hernandez replied, "[W]ell, we're both

involved, we have to finish him." (Doc. 11-2 at 620)  Because Hernandez failed to come forward with evidence that trial counsel could have used to impeach the migrant worker, the claim was speculative, and the post-conviction court did not unreasonably deny the claim. *Johnson v. Alabama*, 256 F.3d 1156, 1186 (11th Cir. 2001) ("[W]hen an attorney 'substantially impeache[s]' the witness, no claim for ineffectiveness can succeed unless the petitioner comes forward with 'specific information' which 'would have added to the impeachment of the State's witnesses.' Without that kind of information, a petitioner cannot meet his burden of proving a *Strickland* violation.") (citations omitted).

**Statements about Hernandez's Desire to Dispose of Body**

At trial, the migrant worker testified that, after Hernandez and the co-defendant killed the victim, Hernandez asked a friend for a ride to dump the victim's body. (Doc. 11-2 at 639–40)  The post-conviction court denied the claim based on trial counsel's failure to impeach the migrant worker concerning this testimony because the detective testified that Hernandez told him the same during the interrogation. (Doc. 11-2 at 79)  The detective testified that Hernandez said that he told a neighbor who owned a car, "[L]et's go drop him off." (Doc. 11-3 at 353) The recorded interrogation confirms that Hernandez made this statement to the detective. (Doc. 11-2 at 151)  Because Hernandez's statement to the detective was consistent with the testimony by the migrant worker, and Hernandez failed to come forward with evidence that trial counsel could have used to impeach the migrant worker, the post-conviction court did not unreasonably deny the claim. *Johnson*,

256 F.3d at 1186.  *Pearce v. State*, 880 So. 2d 561, 569 (Fla. 2004) ("To be inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial.").

**Remaining Impeachment**

The post-conviction court denied the claims based on trial counsel's failure to impeach the migrant worker concerning the above testimony and all remaining testimony listed in the motion because Hernandez failed to demonstrate prejudice under *Strickland*.  (Doc. 11-5 at 77–80)  The post-conviction court determined that Hernandez could not demonstrate that any further impeachment of the migrant worker would have changed the outcome at trial because overwhelming evidence, including Hernandez's detailed confession to the murder, corroborated by physical evidence at the crime scene, proved his guilt.  (Doc. 11-5 at 77–80)  Because overwhelming evidence proved Hernandez's guilt, the post-conviction court did not unreasonably apply *Strickland*'s prejudice prong.  *Tejada v. Dugger*, 941 F.2d 1551, 1559–60 (11th Cir. 1991) ("[B]ecause the evidence against Tejada is overwhelming, Tejada has not demonstrated that the alleged errors, if true, would have so prejudiced his defense that 'there [would be] a reasonable probability that . . . the result of the proceeding would have been different' if his counsel had not committed the alleged errors.") (citing *Strickland*, 466 U.S. at 694).

### *Giglio* Claim

Hernandez asserts that trial counsel was ineffective for not arguing that the prosecutor violated *Giglio* by presenting false testimony by the migrant worker. The post-conviction court summarized the claim as follows (Doc. 11-5 at 74):

> Specifically, [Hernandez] alleges his counsel failed to impeach the State's key witness regarding the fact that he lied about state officials offering him something in exchange for his testimony. He also alleges the State failed to disclose this fact to Defendant's counsel and failed to correct the witness's false statement when it appeared at trial. He alleges had his counsel investigated this case for impeachment evidence on this witness, he would have discovered that this witness obtained a permit to stay in America and not be deported in exchange for his testimony. He alleges this is something the jury should have heard in order to weigh this witness's testimony.

The post-conviction court denied the claim because the migrant worker did not testify at trial about whether he received a permit to stay in the country for his testimony.  (Doc. 11-5 at 75–76)  Because the migrant worker did not deny that he received a permit, the post-conviction court determined that the prosecutor did not present false testimony concerning the matter, and trial counsel did not deficiently perform by failing to assert a *Giglio* claim.  (Doc. 11-5 at 76)  The post-conviction court further determined that any false testimony concerning the matter was not "material" under *Giglio* because overwhelming evidence, including the migrant worker's eyewitness testimony and Hernandez's detailed confession, proved Hernandez's guilt.  (Doc. 11-5 at 76)

The transcript of the migrant worker's trial testimony confirms that the migrant worker did not testify about whether state officials offered him a permit to stay in the country for his testimony.  (Doc. 11-2 at 586–678)  Because the migrant

worker did not falsely testify, the post-conviction court did not unreasonably apply *Giglio*. *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 949 (11th Cir. 2016) ("It is by now almost axiomatic that, '[i]n order to prevail on a *Giglio* claim, a petitioner must establish [1] that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and [2] that the falsehood was material.'") (citation omitted).

Also, because trial counsel substantially impeached the migrant worker (Doc. 11-5 at 647–70) and Hernandez failed to come forward with evidence to demonstrate that the migrant worker received a permit to stay in the country for his testimony (Doc. 11-5 at 39), the post-conviction court did not unreasonably deny the speculative *Strickland* claim. *Johnson*, 256 F.3d at 1186.

Lastly, because Hernandez's detailed confession, corroborated by the eyewitness testimony and physical evidence, overwhelmingly proved his guilt, the post-conviction court did not unreasonably determine that any false testimony was not material under *Giglio*. *Raleigh*, 827 F.3d at 949 ("A falsehood is material if there is 'any reasonable likelihood' that it could have affected the result.") (citation omitted); *Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1281 (11th Cir. 2005) ("Whether the false testimony offered in a particular case could in any reasonable likelihood have affected the judgment of the jury must be analyzed in light of a number of highly context-specific factual considerations, including the importance of the testimony of the falsely testifying witness to the government's case, the nature and

21

significance of the falsehood, and, notably, to what extent the witness's testimony is substantially corroborated by other evidence."). Sub-claim A is denied.

**Sub-claim B**

Hernandez asserts that trial counsel was ineffective for not objecting to improper comments by the prosecutor during closing and for not moving for a new trial based on the alleged improper comments. (Doc. 1 at 5) In his federal petition, Hernandez identifies nine comments by the prosecutor. (Doc. 1 at 5–6) The post-conviction court did not unreasonably deny the claim.

**Comment One**

Hernandez asserts that trial counsel should have objected to the following comment (Doc. 1 at 5):

> [Prosecutor:]  The beating itself, demonstrates ill will, hatred, or spite. And it's not just the beating. The duct tape to the hands, itself. Looking at State's Exhibit No. 2-GG. That demonstrates two things: One, the defendant wanted to gain control of the victim. And two, the defendant did not want the victim to have the ability to protect himself. That evidence alone demonstrates a depraved mind.

(Doc. 11-3 at 442)

The post-conviction court denied the claim based on this comment because the migrant worker testified that he observed Hernandez and the co-defendant beat and kick the victim and wrap duct tape around the victim's hands and head. (Doc. 11-5 at 82) The post-conviction court determined that the prosecutor fairly commented on this testimony. (Doc. 11-5 at 82) The post-conviction court

accurately described the migrant worker's testimony (Doc. 11-2 at 634–38), police discovered the victim with duct tape wrapped around his head and his hands (Doc. 11-3 at 21, 90, 173), and the prosecutor appropriately drew logical inferences from this evidence.  Consequently, an objection to the prosecutor's comment would not have succeeded, and the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297.  *Valentine v. State*, 98 So. 3d 44, 56 (Fla. 2012) ("'[M]erely arguing a conclusion that can be drawn from the evidence is permissible fair comment.'") (citation omitted).

**Comment Two**

Hernandez asserts that trial counsel should have objected to the following comment (Doc. 1 at 5):

> [Prosecutor:]      Again, what Mr. Hernandez, the witness,
> is saying is corroborated by the physical
> evidence. That's what the defendant did.

(Doc. 11-3 at 443)

The post-conviction court denied the claim based on this comment because physical evidence corroborated the migrant worker's testimony that he observed Hernandez and the co-defendant beat and kick the victim and wrap duct tape around the victim's hands and head.  (Doc. 11-5 at 83)  The post-conviction court determined that the prosecutor fairly commented on this testimony and evidence. (Doc. 11-5 at 83)  The post-conviction court accurately described the migrant worker's testimony and accurately determined that physical evidence corroborated that testimony.  Because the prosecutor appropriately drew logical inferences from that evidence, an objection to the prosecutor's comment would not have succeeded,

and the post-conviction court did not unreasonably deny the claim.  *Valentine*,

98 So. 3d at 56.

### Comment Three

Hernandez asserts that trial counsel should have objected to the following

comment (Doc. 1 at 5):

> [Prosecutor:] He also admits that while he's duct taping the victim around the head, while he's doing this to the victim, while that's going on, he admits that Rodriguez was holding him down and strangling him. He admits that. Then later he says, well, the strangling didn't happen until after, after this was done. The defendant also admits that that duct tape that he pulled out from the kitchen, that it's all we gave him. There was no more duct tape left. They used any amount of — all the duct tape they had. They kept going and going and going and going, wrapping that man's head in the duct tape until it was all gone. And that's something that the defendant, himself, admitted to doing himself and his co-defendant. He says they both did it. Just look at the duct tape, itself, when you're thinking of a depraved mind, ill, will, intent. Just look at that. Would a reasonable person assume that's going to kill a person? Yeah. Is that a disregard for human life? Yeah.

(Doc. 11-3 at 445)

The post-conviction court denied the claim based on this comment because

physical evidence and Hernandez's confession corroborated the migrant worker's

testimony that he observed Hernandez and the co-defendant beat and kick the

victim and wrap duct tape around the victim's hands and head.  (Doc. 11-5 at 84)

The post-conviction court determined that the prosecutor fairly commented on this

24

testimony and evidence.  (Doc. 11-5 at 84)  The post-conviction court accurately

described Hernandez's confession (Doc. 11-2 at 134–37, 144–49, 154–60), and the

prosecutor appropriately drew logical inferences from that evidence.  Consequently,

an objection to the prosecutor's comment would not have succeeded, and the post-

conviction court did not unreasonably deny the claim.  *Valentine*, 98 So. 3d at 56.

### Comment Four

Hernandez asserts that trial counsel should have objected to the following

comment (Doc. 1 at 5):

> [Prosecutor:]    So maybe the drag marks are them
> bringing him back from that grassy area
> or the leafy area back to the house, not
> dragging him from the house to that area.

(Doc. 11-3 at 450)

The post-conviction court denied the claim based on this comment because a

detective testified that he observed drag marks from a porch behind the house to a

large oak tree in the center of the crime scene.  (Doc. 11-5 at 84)  The

post-conviction court determined that the prosecutor fairly commented on the

detective's testimony.  (Doc. 11-5 at 84)  The post-conviction court accurately

described the detective's testimony (Doc. 11-3 at 100–04), and the prosecutor

appropriately drew logical inferences from that testimony.  Consequently, an

objection to the prosecutor's comment would not have succeeded, and the post-

conviction court did not unreasonably deny the claim.  *Valentine*, 98 So. 3d at 56.

**Comment Five**

Hernandez asserts that trial counsel should have objected to the following comment (Doc. 1 at 5):

> [Prosecutor:]      And you promised, each of you, that you
> would convict of the highest offense that's
> proven by law. And that's what we've
> done here today.

(Doc. 11-3 at 454)

The post-conviction court denied the claim based on this comment because the prosecutor accurately described the trial court's instruction to the jury.  (Doc. 11-5 at 84–85)  The trial court instructed (Doc. 11-3 at 493): "If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt."  Because the prosecutor accurately described the instruction and a prosecutor may explain how the law applies to the evidence, an objection to the prosecutor's comment would not have succeeded, and the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297. *Jordan v. State*, 176 So. 3d 920, 928 (Fla. 2015) ("[The prosecutor] explained to the jury how the law was applicable to the evidence presented at trial . . . . Such an explanation is a permissible argument.").

**Comment Six**

Hernandez asserts that trial counsel should have objected to the following comment (Doc. 1 at 5):

> [Prosecutor:]      And so then the defense looks at it and he
> reads from the transcript and in the
> transcript in black and white, [the
> Defendant] goes, "No, no, no, no." Well,

> Spanish — Spanish people sometimes can
> have a different way of expressing
> themselves. For example, "Do you mind if
> I sit here?" Right here knowing the way
> that I said it, "No, no, no, no" means yes.
> You know, so when you look at the context
> of this statement together with the
> actions, it's clear that the defendant was
> saying I want to speak with you.

(Doc. 11-3 at 476)

The post-conviction court denied the claim based on this comment because the prosecutor responded to trial counsel's argument during closing that Hernandez did not voluntarily speak with the detective during the interrogation. (Doc. 11-5 at 85–86) During closing, trial counsel argued that Hernandez told the detective that he did not want to answer any questions about the crime by saying, "no, no, no." (Doc. 11-3 at 465) On cross-examination, the detective, who spoke to Hernandez in Spanish, testified that he did not understand Hernandez's response, "no, no, no," to convey that Hernandez did not want to speak with the detective. (Doc. 11-3 at 367–68) During the recorded interrogation, after Hernandez said, "no, no, no," the detective confirmed with Hernandez four times that he wanted to voluntarily speak with the detective. (Doc. 11-2 at 58) Because the post-conviction court accurately described trial counsel's argument and in rebuttal closing the prosecutor appropriately responded to trial counsel's argument and drew reasonable inferences from the evidence, an objection to the comment would not have succeeded, and the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297; *Valentine*, 98 So. 3d at 56. *Andres v. State*, 254 So. 3d 283, 300 (Fla. 2018) ("While the State cannot comment on the defendant's failure to present evidence,

there is no impropriety in observing, in response to arguments made by the defense, that the defense's theory of this case is not supported by actual evidence.").

### Comment Seven

Hernandez asserts that trial counsel should have objected to the following comment (Doc. 1 at 5):

> [Prosecutor:]    Yes, the co-defendant is guilty, but so is Hernandez.

(Doc. 11-3 at 479)

The post-conviction court denied the claim based on this comment because the comment was "permissible, vigorous argument." (Doc. 11-5 at 86)  Because a prosecutor may explain how the law applies to the evidence, an objection to the prosecutor's comment would not have succeeded, and the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297; *Jordan*, 176 So. 3d at 928.

### Comment Eight

Hernandez asserts that trial counsel should have objected to the following comment, which he contends denigrated the defense (Doc. 1 at 5):

> [Prosecutor:]    Now, I anticipated that what the defense will say is he had no way of seeing those things. Look how far away the house is. I'm looking at 2-C. That is a great distance. And yeah, it was dark outside. There was some lighting out there, but not a lot. So you can't believe what he's saying because he really didn't have the opportunity to see the things that he suggests to you that he did. But let's critically evaluate that for a second. . . .

(Doc. 11-3 at 440)

The post-conviction court denied the claim based on this comment because the comment was "permissible, vigorous argument." (Doc. 11-5 at 87)  The migrant worker testified that he saw the co-defendant choking the victim and Hernandez wrapping duct tape around the victim's head.  (Doc. 11-2 at 666–67)  On cross-examination, trial counsel asked the migrant worker to show in a photograph where he was standing when he observed Hernandez and the co-defendant killing the victim.  (Doc. 11-2 at 665)  Trial counsel further asked the migrant worker whether the events occurred at night and whether the area around the bushes was well lit.  (Doc. 11-2 at 668–69)  The migrant worker testified that he observed the events at night through a window and responded that the area was partially lit.  (Doc. 11-2 at 669)  Because the prosecutor appropriately responded in closing to trial counsel's attack on the migrant worker's ability to perceive the events, an objection to the comment would not have succeeded, and the post-conviction court did not unreasonably deny the claim.  *Pinkney*, 876 F.3d at 1297; *Morris v. State*, 233 So. 3d 438, 448 (Fla. 2018) ("[T]here was no error because the State's argument was an invited response in rebuttal to Morris' attack on Ashley's credibility.").

### Comment Nine

Hernandez asserts that the prosecutor misstated the evidence by commenting (Doc. 1 at 6):

> [Prosecutor:]     When law enforcement asked him, who put the tape on his head? That is you? He says yes. He admitted that he went and he was the one who decided to get the tape. Remember, he was contradicting himself a little bit in his statement

> because first he says, oh, the co-defendant
> told me to get the tape, ah, then he says,
> no, no, no, I thought about it. That was
> my decision. I went and I got the tape.

(Doc. 11-3 at 444)

The post-conviction court denied the claim because the detective who interrogated Hernandez testified on cross-examination that Hernandez first said that the co-defendant told him to get the tape and testified on redirect examination that Hernandez later said that "it was his own idea to get the tape." (Doc. 11-5 at 88–89) Because the post-conviction court accurately described the detective's testimony (Doc. 11-3 at 372, 377–78) and the prosecutor fairly commented on the testimony, an objection to the comment would not have succeeded, and the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297; *Valentine*, 98 So. 3d at 56.

Because all the prosecutor's comments were proper, a motion for a new trial would not have succeeded, and the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297. *Spencer v. State*, 645 So. 2d 377, 383 (Fla. 1994) ("In order for the prosecutor's comments to merit a new trial, the comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise."). Sub-claim B is denied.

**Sub-claim C**

Hernandez asserts that trial counsel was ineffective for not filing an expanded motion for new trial asserting that the guilty verdict was contrary to the weight of the evidence.  The post-conviction court denied the claim because the prosecutor proved Hernandez's guilt with overwhelming evidence, including his confession corroborated by eyewitness testimony by the migrant worker and physical evidence at the crime scene.  (Doc. 11-5 at 73–74)  Because the post-conviction court accurately described the overwhelming evidence proving Hernandez's guilt, and this Court defers to the state court's determination under state law that the verdict was not contrary to the weight of that evidence, a motion for a new trial would not have succeeded, and the post-conviction court did not unreasonably deny the claim.  *Pinkney*, 876 F.3d at 1297.  *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . . ."); *Geibel v. State*, 817 So. 2d 1042, 1044 (Fla. 2d DCA 2002) ("[The] rule [governing a motion for a new trial asserting that the verdict is contrary to the weight of the evidence] 'enables the trial judge to weigh the evidence and to determine the credibility of witnesses so as to act, in effect, as an additional juror.'") (citation omitted).  Sub-claim C is denied.  Ground Two, Ground Three, and Ground Four are denied.

**Ground Five**

Hernandez asserts that trial counsel was ineffective for advising him not to testify at trial and for not preparing him to testify at trial.  (Doc. 1 at 6–7)  He contends that he would have testified that: (1) he did not intend to kill the victim and only followed the direction of his co-defendant to beat the victim because the victim stole their belongings, (2) he did not believe that wrapping the duct tape around the victim's head would cause the victim's death, (3) he was not married and therefore did not want to kill the victim because of the victim's affair with his wife, (4) the co-defendant never expressed his intent to kill the victim, (5) he and the co-defendant did not seek help from anyone to dispose of the victim's body, and (6) the migrant worker who testified was drunk when he observed the events.  (Doc. 1 at 7)  He further contends that trial counsel misadvised him by instructing him that he could suffer impeachment, that his testimony was redundant to his recorded confession, which the prosecutor played for the jury, and that his testimony would defeat the argument that the jury should give no weight to the involuntary confession.  (Doc. 1 at 6–7)

The post-conviction court denied this claim because the trial judge conducted a thorough colloquy with Hernandez and determined that Hernandez freely and voluntarily waived his right to testify at trial.  (Doc. 11-5 at 91–94)  During the colloquy, Hernandez under oath confirmed that he decided not to testify after discussing the advantages and disadvantages of testifying with trial counsel.  (Doc. 11-5 at 92–93)  Because the post-conviction court accurately quoted the colloquy

32

between the trial judge and Hernandez (Doc. 11-3 at 391–95), the post-conviction court did not unreasonably deny the claim. *Lott v. Att'y Gen., Fla.*, 594 F.3d 1296, 1302–03 (11th Cir. 2010).

Also, the post-conviction court determined that trial counsel correctly advised Hernandez that he would suffer impeachment if he testified, that his testimony was redundant to his recorded confession, and that his testimony would defeat the argument that the jury should give no weight to the involuntary confession. (Doc. 11-5 at 94)  The prosecutor would have impeached Hernandez with his confession, as a prior inconsistent statement, if his testimony differed from his confession.  For example, if Hernandez testified that he did not intend to kill the victim, the prosecutor would impeach Hernandez with his statement to the detective that he intended to punish the victim. (Doc. 11-2 at 147–49, 156)  If Hernandez testified that he was not married, the prosecutor would impeach Hernandez with his statement to the detective that he was married. (Doc. 11-2 at 163–64)  If Hernandez testified that the co-defendant did not express his intent to kill the victim, the prosecutor would impeach Hernandez with his statement to the detective that the co-defendant told him that he wanted to kill the victim. (Doc. 11-2 at 150)  If Hernandez testified that he did not seek help from anyone to dispose of the victim's body, the prosecutor would impeach Hernandez with his statement to the detective that he asked a neighbor who owned a blue car to help "drop [the victim] off somewhere." (Doc. 11-2 at 151)

The prosecutor would have further argued that Hernandez's confession was not involuntary if he voluntarily testified at trial and repeated his statements in the confession.  Consequently, the post-conviction court did not unreasonably deny the claim.  *Pearce*, 880 So. 2d at 569 ("The theory of admissibility is not that the prior statement is true and the in-court testimony is false, but that because the witness has not told the truth in one of the statements, the jury should disbelieve both statements.").

Lastly, the post-conviction court determined that Hernandez's testimony would not have changed the outcome at trial because overwhelming evidence proved his guilt.  (Doc. 11-5 at 95)  Because the post-conviction court accurately described the overwhelming evidence proving Hernandez's guilt, the post-conviction court did not unreasonably apply *Strickland*'s prejudice prong.  *Atwater v. Crosby*, 451 F.3d 799, 811 (11th Cir. 2006 ) ("Considering the overwhelming evidence of Atwater's guilt, the state trial court's finding that Atwater is unable to demonstrate prejudice as required by *Strickland* is neither an unreasonable application of, nor contrary to, federal law.") (citation omitted).  Ground Five is denied.

**Ground Six**

Hernandez asserts that trial counsel was ineffective for not arguing to the jury that he was guilty of third-degree felony murder or manslaughter, instead of second-degree murder.  (Doc. 1 at 7)  He asserts that the prosecutor failed to prove that he acted with ill will, hatred, spite, or an evil intent to support a conviction for second-degree murder.  (Doc. 1 at 7)  He contends that, during his confession, he

told the detective that he did not know the victim, he did not intend to kill the victim, he did not hold a grudge against the victim, and he mistakenly killed the victim.  (Doc. 1 at 7)  He contends that he called 911 before the killing which rebuts the migrant worker's testimony that he discussed with the co-defendant the need to kill the victim and the need to dispose of the victim's body.  (Doc. 1 at 7)  Also, he contends that he was not married which rebuts the migrant worker's testimony that he intended to kill the victim because the victim had an affair with his wife.  (Doc. 1 at 7)

The post-conviction court denied the claim because evidence at trial proved that Hernandez repeatedly hit and kicked the victim, wrapped duct tape around the victim's mouth and head, and bound the victim's feet.  (Doc. 11-5 at 97)  Evidence that Hernandez repeatedly and violently struck the victim and suffocated the victim by wrapping duct tape around his head convincingly proved the requisite intent for second-degree murder.  *Bigham v. State*, 995 So. 2d 207, 213 (Fla. 2008) ("[W]e find the evidence of strangulation sufficient to sustain a conviction for second-degree murder, which requires the finding of an 'act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual.'") (citation omitted).

Also, Hernandez told the detective during the interrogation that he and the co-defendant beat the victim, and Hernandez went inside to get tape because they intended to punish the victim.  (Doc. 11-2 at 147)  Hernandez repeated that he

placed tape on the victim's mouth to punish him. (Doc. 11-2 at 148, 156) Viewing these admissions in the light most favorable to the prosecution, the prosecutor proved that Hernandez acted with ill will, hatred, spite, or an evil intent. *Rasley v. State*, 878 So. 2d 473, 477–78 (Fla. 1st DCA 2004).

The post-conviction court further denied the claim because the verdict form permitted the jury to find Hernandez guilty of manslaughter by act and third-degree murder, the trial court instructed the jury to find Hernandez guilty of the highest offense proven beyond a reasonable doubt, and the jury found Hernandez guilty of second-degree murder. (Doc. 11-5 at 97) Because the post-conviction court accurately described the record (Docs. 11-2 at 196 and 11-3 at 493) and Hernandez only speculated that the jury would have found him guilty of a lesser offense if trial counsel conceded guilt on the lesser offense, the post-conviction court did not unreasonably deny the claim. *Crapser v. Sec'y, Dep't Corrs.*, 855 F. App'x 626, 627–28 (11th Cir. 2021) (citing *Sanders v. State*, 946 So. 2d 953, 960 (Fla. 2006)). Ground Six is denied.

**Ground Seven**

Hernandez asserts that trial counsel was ineffective for not filing a motion requesting a competency evaluation because he contends that an intellectual disability rendered him incompetent. (Doc. 1 at 9–10) ("Sub-claim A") He further asserts that trial counsel was ineffective for not filing an expanded motion to suppress his statements because he contends that the intellectual disability

rendered him unable to knowingly and voluntarily waive his constitutional rights. (Doc. 1 at 9) ("Sub-claim B")

**Sub-claim A**

Hernandez asserts that trial counsel was ineffective for not filing a motion requesting a competency evaluation because he contends that an intellectual disability rendered him incompetent. (Doc. 1 at 9–10)  The post-conviction court denied this claim after an evidentiary hearing.  (Doc. 11-10 at 187–94)

At the hearing, trial counsel testified that a defense mitigation specialist interviewed Hernandez before trial, and Hernandez denied that he suffered from "mental health issues."  (Doc. 11-10 at 190)  Trial counsel further testified that, with the assistance of a Spanish interpreter, he reviewed the evidence and deposition testimony with Hernandez and discussed potential defenses.  (Doc. 11-10 at 191)  Hernandez was able to articulate what happened during the crime.  (Doc. 11-10 at 192)  Trial counsel testified that Hernandez participated during trial and did not act in any way that would lead trial counsel to believe that Hernandez did not understand the proceedings.  (Doc. 11-10 at 191–92)  At the hearing, the prosecutor introduced into evidence two reports by psychologists who reviewed records related to Hernandez's case and opined that Hernandez did not suffer from an intellectual disability that would render him incompetent for trial.  (Doc. 11-10 at 194)

Hernandez testified that he did not understand trial counsel, trial counsel did not visit him in jail, a mitigation specialist did not interview him, trial counsel did

not review the evidence with him, and a doctor never interviewed him.  (Doc. 11-1 at 192–93)  The post-conviction court determined that trial counsel was more credible than Hernandez, that trial counsel did not have a good faith basis to file a motion requesting a competency evaluation, and that a motion requesting a competency evaluation would not have resulted in a finding that Hernandez was incompetent. (Doc. 11-10 at 194)

"Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'"  *Consalvo v. Sec'y, Dep't Corrs.*, 664 F.3d 842, 845 (11th Cir. 2011) (citation omitted).  Because the post-conviction court accurately summarized trial counsel's testimony and the experts' reports presented at the hearing (Doc. 11-10 at 235–42, 249–63), the post-conviction court did not unreasonably determine a fact.  28 U.S.C. § 2254(d)(2).  Also, because trial counsel did not observe behavior by Hernandez that would have supported a "reasonable ground to believe that the defendant is not mentally competent to proceed," and the experts' reports confirmed that Hernandez did not suffer from an intellectual disability that would have rendered him incompetent, the post-conviction court did not unreasonably apply *Strickland*. Fla. R. Crim. P. 3.210(b).  *Thompson v. State*, 88 So. 3d 312, 319 (Fla. 4th DCA 2012) ("'[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.'") (citation omitted). *Strickland*, 466 U.S. at 691 ("Counsel's actions are usually based, quite properly, on informed strategic choices

made by the defendant and on information supplied by the defendant.  In particular, what investigation decisions are reasonable depends critically on such information.").

Hernandez asserts that the experts, who examined him in 2016, were not competent to opine on his competency at the time of his trial in 2011. (Doc. 1 at 9) However, the experts addressed this argument in their reports:

> If there was any point in time that [Hernandez] may have been incompetent, it was clearly not due to intellectual disability as he would have had to have manifested criteria for the diagnosis during the developmental period (birth to 21; childhood or adolescence) and he clearly would not be able to have recovered from them such that he fails to meet them currently.

> (Doc. 11-10 at 256)

> In addition, intellectual disability, *per se*, is a permanent condition. There is no evidence from the current evaluation of [Hernandez] by the undersigned or from the available documentation regarding his developmental history, as well as from Dr. Yolanda Leon's evaluation of [Hernandez] of actually being intellectually disabled currently and/or at the time of his arrest and through the conclusion of the trial.

> (Doc. 11-10 at 263)

At the evidentiary hearing, Hernandez presented no evidence that he suffered from an intellectual disability that rendered him incompetent at the time of trial.  (Doc. 11-10 at 182–84)  Because Hernandez carried the burden to demonstrate deficient performance and prejudice under *Strickland*, the post-conviction court did not unreasonably deny the claim.  *Strickland*, 466 U.S. at 687.

**Sub-claim B**

Hernandez asserts that trial counsel was ineffective for not filing an expanded motion to suppress his statements.  (Doc. 1 at 9) He contends that trial

counsel should have argued that he was unable to knowingly and voluntarily waive his constitutional rights because of an intellectual disability. (Doc. 1 at 9)

The post-conviction court denied this claim after determining that trial counsel moved to suppress Hernandez's statements and asserted "as one of the grounds [Hernandez's] limited formal education and level of understanding prohibit[ed] him from possessing the requisite mental capability to understand the concept of *Miranda* and the waiver of such." (Doc. 11-5 at 99) The post-conviction court further determined that the trial court denied the claim after finding "nothing significant in the transcript of the interrogation, nor [ ] anything presented during the course of the motion to suppress hearing to indicate [Hernandez's] ability to comprehend the meaning and effect of *Miranda* was impaired in any way." (Doc. 11-5 at 99)

Because the post-conviction court accurately described Hernandez's motion to suppress (Doc. 11-9 at 40–41) and the order denying the motion to suppress (Doc. 11-10 at 88–89), the post-conviction court did not unreasonably determine a fact. 28 U.S.C. § 2254(d)(2). The trial court denied the claim based on Hernandez's "level of understanding" as follows (Doc. 11-2 at 67–68):

> Last, the Defendant's motion alleges that based upon the Defendant's limited formal education and his "level of understanding," the Defendant did not possess the requisite mental capability to understand the concept of *Miranda*. The Court rejects this argument. The transcript reveals that Detective Lugo not only read the Defendant *Miranda*, but that after each warning he clearly asked the Defendant if he understood them. In each instance, the Defendant replied "yes" or stated "Mm hmm" in conjunction with an affirmative nod. Additionally, in many instances the Detective restated the warning in simple language asking the Defendant if he

40

understood his rights.[4] The Defendant repeatedly acknowledged he understood his *Miranda* rights. There was nothing significant in the transcript nor was anything presented during the course of the hearing to indicate that the Defendant's ability to comprehend the meaning and effect of *Miranda* was impaired in any way.[5] The Court makes this determination despite the fact that the Defendant only completed the third grade and has limited reading capabilities. Hence, after reviewing the entire video tape of the questioning, the totality of the circumstances in this case reflect[s] that the State has met its burden of showing by a preponderance of the evidence that the Defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights and that the statement given after said waiver was voluntarily given.

> [4] The transcript reflects that Detective Lugo restated the *Miranda* warnings by saying, "that means" and then offered an additional explanation of the warning. The Court finds that the additional explanations provided by the Detective were a more simplistic adaptation of *Miranda.*

> [5] This case is distinguishable from *Hamilton v. State*, 915 So. 2d 1228 (Fla. 2d DCA 2005) in which many of the Defendant's responses to *Miranda* were non-responsive or unintelligible. There was also evidence that Hamilton had a major mental disorder as well as a low IQ. *See also Thomas v. State*, 894 So. 2d 126 (Fla. 2004) where the Florida Supreme Court upheld the lower court's denial of a motion to suppress a confession despite evidence that the Defendant was "slow" when the officers undertook precautions by reading *Miranda* in simple language and repeatedly asking the Defendant if he understood his rights.

Because the transcript of the interrogation supports the trial court's determination that Hernandez communicated intelligibly and repeatedly acknowledged that he understood his rights (Doc. 11-2 at 89–100), the post-conviction court did not unreasonably deny the claim. *Waterman v. State*, 255 So. 3d 980, 984 (Fla. 2d DCA 2018) ("[T]hough an intellectual disability alone

does not render a confession involuntary, it may render a confession involuntary in those 'rare cases' where the disability is 'so severe as to render the defendant unable to communicate intelligibly or understand the meaning of *Miranda* warnings even when presented in simplified form.'") (quoting *Thompson v. State*, 548 So. 2d 198, 203 (Fla. 1989)).  Ground Seven is denied.

**Ground Eight**

Hernandez asserts that appellate counsel was ineffective for not arguing on appeal that fundamental error arose from the manslaughter instruction given to the jury at trial.  (Doc. 1 at 10)  ("Sub-claim A")  He further asserts that appellate counsel was ineffective for not arguing that fundamental error arose from the trial court's failure to give an instruction on manslaughter by culpable negligence.  (Doc. 1 at 10) ("Sub-Claim B")

**Sub-claim A**

Hernandez asserts that appellate counsel was ineffective for not arguing on appeal that fundamental error arose from the manslaughter instruction given to the jury at trial.  (Doc. 1 at 10)  The state appellate court denied the claim in an unelaborated decision without a written opinion.  (Doc. 11-4 at 101)  Hernandez must demonstrate no reasonable basis for the denial of relief.  *Richter*, 562 U.S. at 98.  The trial court instructed the jury on manslaughter by act as follows (Doc. 11-3 at 484):

> [Trial court:]      To prove the crime of manslaughter, the State must prove the following two elements beyond a reasonable doubt:
>
> 1. Jose Hernandez-Escudero is dead.

> 2. Nicholas Hernandez's act caused the death of Jose Hernandez-Escudero.
>
> . . .
>
> In order to convict of manslaughter by act, it is not necessary for the State to prove that the defendant had the intent to cause death, only an intent to commit an act that was not justified or excusable and which caused the death.

Hernandez contends that the state supreme court held that this instruction was fundamentally erroneous while his direct appeal was pending.  (Doc. 1 at 10)  An earlier standard instruction erroneously required the prosecutor to prove that the defendant "intentionally caused the death of the victim."  Fla. Std. Jury Instr. (Crim.) 7.7 (2006).  *State v. Montgomery*, 39 So. 3d 252, 259 (Fla. 2010), held that manslaughter by act does not require proof that the defendant intended to kill the victim, and fundamental error arises when the trial court gives the erroneous instruction, a jury find the defendant guilty of second-degree murder, and second-degree murder is only one step removed from the necessary lesser included offense of manslaughter.  Because the instruction given to the jury in Hernandez's case does not contain the erroneous language identified in *Montgomery*, no fundamental error arose in Hernandez's case, the issue on appeal would not have succeeded, and the state appellate court did not unreasonably deny the claim.  *Pinkney*, 876 F.3d at 1297.  *Rangel v. State*, 132 So. 3d 844, 846–47 (Fla. 2d DCA 2013).

**Sub-Claim B**

Hernandez asserts that appellate counsel was ineffective for not arguing that fundamental error arose from the trial court's failure to give an instruction on manslaughter by culpable negligence.  (Doc. 1 at 10)  Hernandez failed to raise this claim in his petition alleging ineffective assistance of appellate counsel.  (Doc. 11-4 at 93–99)  However, the Respondent contends that Hernandez exhausted the claims in Ground Eight (Doc. 10 at 42) and waives that defense.  28 U.S.C. § 2254(b)(3).  Consequently, the Court must review the merits of the claim.  *Vazquez v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 964, 967–68 (11th Cir. 2016).

The prosecutor charged Hernandez with second-degree murder (Doc. 11-2 at 28–29), and manslaughter is a necessary lesser included offense of second-degree murder.  *Pena v. State*, 829 So. 2d 289, 295 (Fla. 2d DCA 2002).  A trial court must instruct the jury on manslaughter by culpable negligence if the evidence supports the instruction.  *Reed v. State*, 531 So. 2d 358, 360 (Fla. 5th DCA 1988) ("[T]he vast majority of manslaughter convictions will be grounded on involuntary acts, *i.e.*, the deaths will have been caused by the culpable negligence of the defendant. . . . [U]nless the evidence clearly supports only a voluntary act or procurement, the instruction on and definition of culpable negligence should be given when defining manslaughter for the jury.").

No fundamental error arose because the evidence at trial did not support an instruction on manslaughter by culpable negligence.  During the interrogation, Hernandez told the detective that he hit the victim over the head after the victim

exited the bathroom.  (Doc. 11-2 at 144)  Hernandez said that he and the

co-defendant continued to hit the victim.  (Doc. 11-2 at 145–46)  Hernandez

admitted that he put tape on the victim's mouth, wrapped the tape around the

victim's head, and used the tape to bind the victim's hands because he wanted to

punish the victim.  (Doc. 11-2 at 147–49)  Even though Hernandez claimed that the

death was a "mistake" (Doc. 11-2 at 165), his admissions proved that he voluntarily

and purposefully wrapped the victim's head with duct tape.  The medical examiner

opined that the duct tape wrapped around the victim's head in part caused the

victim to suffocate.  Because the evidence indisputably proved that a voluntary and

purposeful act caused the victim's death, the evidence did not support an

instruction for manslaughter by culpable negligence.  Because no fundamental error

arose from the lack of an instruction on manslaughter by culpable negligence,

appellate counsel was not ineffective for failing to raise the meritless claim.  *Harris*

*v. State*, 570 So. 2d 397, 399 (Fla. 3d DCA 1990) ("Unless the evidence in the record

unmistakably supports only the State's theory, that the defendant's act was

voluntary, the trial court is obligated to instruct the jury on, and define, culpable

negligence.") (citing *Reed*, 531 So. 2d at 358).  Ground Eight is denied.

**Ground Nine**

Hernandez asserts that trial counsel was ineffective for not arguing that the

jury did not adequately reflect a fair cross-section of the community.  (Doc. 1 at 11)

He contends that the jury venire included several Hispanic jurors, trial counsel

failed to select Hispanic jurors, and trial counsel should have objected to the absence of Hispanic jurors on the jury.  (Doc. 1 at 11)

The Respondent asserts that the claim is unexhausted and procedurally barred.  (Doc. 10 at 46)  Hernandez admits that the claim is unexhausted.  (Doc. 1 at 11)  Because the state court would deny the claim as procedurally barred if Hernandez returned to state court to exhaust the claim, the claim is procedurally defaulted on federal habeas.  Fla. R. Crim. P. 3.850(b), (h).  *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998).

Hernandez contends that his lack of education and intelligence, the lack of assistance of post-conviction counsel, and his actual innocence of second-degree murder excuse the procedural default.  (Doc. 1 at 11)  Lack of education or diminished intelligence does not serve as cause to excuse a procedural default. *Smith v. Newsome*, 876 F.2d 1461, 1465 (11th Cir. 1989); *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992).  Because Hernandez admitted to the detective that he punished the victim by wrapping duct tape around the victim's head, which caused the victim to suffocate, and fails to come forward with new reliable evidence not presented at trial that demonstrates his innocence, actual innocence does not excuse the procedural default.  *Schlup v. Delo*, 513 U.S. 298, 324–27 (1995).

*Martinez v. Ryan*, 566 U.S. 1, 13–14 (2012), holds that either the absence of post-conviction counsel or ineffective assistance of post-conviction counsel may serve as cause to excuse a procedural default.  On April 27, 2016, the post-conviction court appointed Hernandez counsel to represent him at the evidentiary hearing.  (Doc.

46

11-10 at 130–33)  Because mandate issued on Hernandez's direct appeal on August 1, 2012 (Doc. 11-4 at 45), the time to raise a new claim in a motion for post-conviction relief had expired when the post-conviction court appointed counsel.  Fla. R. Crim. P. 3.850(b), (e).  Consequently, the absence of post-conviction counsel serves as cause to excuse the procedural default.  However, Hernandez cannot demonstrate actual prejudice, or that the underlying ineffective assistance of counsel claim has "some merit."  *Martinez*, 566 U.S. at 14.

Hernandez asserts that trial counsel was ineffective for not arguing that the petit jury did not adequately reflect a fair cross-section of the community.  (Doc. 1 at 11)  However, the U.S. Supreme Court holds that the fair cross-section requirement under the Sixth Amendment that applies to a jury venire does not apply to a petit jury.  *Holland v. Illinois*, 493 U.S. 474, 482–83 (1990) ("'We have never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large.'") (quoting *Lockhart v. McCree*, 476 U.S. 162, 173 (1986)).  Hernandez admits that several Hispanic jurors sat on the jury venire and faults trial counsel for not selecting those jurors.  (Doc. 1 at 11)  Because trial counsel's objection to the petit jury for not adequately reflecting a fair cross-section of the community would not have succeeded, trial counsel was not ineffective.  *Pinkney*, 876 F.3d at 1297.

Hernandez further asserts that trial counsel was ineffective for not selecting the Hispanic jurors.  (Doc. 1 at 11)  He contends that a racially diverse jury is less

47

likely to convict.  (Doc. 1 at 11)  Hernandez does not identify the jurors whom trial counsel should have selected and does not demonstrate a reasonable probability that the outcome of trial would have changed if trial counsel had selected those jurors.  The speculative claim is meritless.  *Tejada*, 941 F.2d at 1559.  Ground Nine is denied.

Accordingly, the Court **DENIES** Hernandez's petition (Doc. 1) for a writ of habeas corpus.  A certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.  28 U.S.C. § 2253(c)(2).  *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  The Clerk is **DIRECTED** to **CLOSE** this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 6th day of February, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**